SKC

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael David Johnson, | No. CV 15-0094-PHX-DGC (DMF) |
| Plaintiff, | |
| v. | **ORDER** |
| Scottsdale Police Department, et al., | |
| Defendants. | |

Plaintiff Michael David Johnson has filed a *pro se* civil rights Second Amended Complaint pursuant to 42 U.S.C. § 1983 (Doc. 16) and a Motion to Appoint Counsel (Doc. 15). The Court will require Defendants Hyman, Rodbell, and the City of Scottsdale to answer the Second Amended Complaint and will deny the Motion to Appoint Counsel.

**I.     Procedural History**

On January 20, 2015, Plaintiff, who was then confined in the Maricopa County Lower Buckeye Jail, filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983 and an Application to Proceed *In Forma Pauperis*. In a March 2, 2015 Order, the Court granted the Application to Proceed and dismissed the Complaint because Plaintiff had failed to state a claim. The Court gave Plaintiff 30 days to file an amended complaint that cured the deficiencies identified in the Order.

**TEMPSREF**

On March 5, 2015, Plaintiff filed a Notice of Party's Change of Address, indicating he was no longer in custody (Doc. 7), and a "Notice/Motion to Withdraw Case" ("Motion to Withdraw") (Doc. 8).  The Court denied the Motion to Withdraw because it found it ambiguous and gave Plaintiff 30 days either to pay the balance of the filing fee or file a non-prisoner Application to Proceed on the form included with that Order.

On May 7, 2015, Plaintiff filed his First Amended Complaint and a non-prisoner Application to Proceed in District Court without Prepaying Fees or Costs (Doc. 11).  In a May 18, 2015 Order, the Court dismissed the First Amended Complaint because Plaintiff had failed to state a claim.[1]  The Court gave Plaintiff 30 days to file a second amended complaint that cured the deficiencies identified in the Order.

On June 15, 2015, Plaintiff filed a Second Amended Complaint (Doc. 16).  The Court will order Defendant Hyman to answer Counts One and Two, Defendant Rodbell to answer Counts Two and Three, and the City of Scottsdale to answer Count Three of the Second Amended Complaint and will dismiss Defendant Nichols without prejudice.

**I.     Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[1] The May 18, 2015 Order erroneously stated that the Court had previously granted Plaintiff's non-prisoner Application to Proceed.  As ordered below, and for good cause showing, the Court now grants that Application to Proceed.

TEMPSREF                                   - 2 -

(2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*)).

**II.    Second Amended Complaint**

In his three-count Second Amended Complaint, Plaintiff sues the City of Scottsdale and the following Scottsdale Police Department ("SPD") officers: Detective Darren Hyman, Chief of Police Alan Rodbell, and Sergeant Joe Nichols. Plaintiff seeks monetary damages and costs.

In **Count One**, Plaintiff asserts a Fourth Amendment claim of unreasonable seizure against Defendant Hyman based on the following allegations: On May 20, 2014, Hyman arrested Plaintiff for violation of an order of protection, identity theft, and fraudulent use of a credit card. These charges all stemmed from Plaintiff's use of his ex-girlfriend's credit card to subscribe to an online movie service. Immediately following Plaintiff's arrest, Hyman and another detective conducted a warranted search of

Plaintiff's vehicle and seized a large envelope containing documents, including evidence, case notes, and strategy for two civil cases Plaintiff had against his ex-girlfriend, who was also the alleged victim of the order of protection violation.  Plaintiff informed Hyman of the contents of the envelope and said, "'You should not take that,'" but Hyman seized it anyway.

The warrant in this case was based solely on the charges for which Plaintiff was arrested.  According to Plaintiff, the warrant covered "indicia of residency/occupancy (items #1 & #2), cell phones, computer equipment, storage devices, paper documents[,] and any items that could be used to store information related to the alleged charges." Item #6 of the warrant also called for documents establishing a relationship between Plaintiff and the alleged victim.  Plaintiff asserts that items 1, 2, and 6 were "completely unnecessary and overly broad" because they would permit the officers to seize anything in Plaintiff's possession that contained his current or former address and anything that might establish his relationship with the alleged victim, and these things were already known to the police.  In particular, Plaintiff alleges that Hyman had already spoken to Plaintiff's apartment manager to confirm his residency.  He further alleges that his relationship with the alleged victim was established in police records and court filings – including the order of protection and Plaintiff's two civil suits – that were already known and possessed by the police prior to Hyman's obtaining the warrant.

Plaintiff further alleges that Hyman appears to have "boiler-plated" the warrant request from a different case because it contains someone else's personal information, including a phone number that is dissimilar to Plaintiff's phone number.  He claims that because Hyman already had sufficient information related to items 1, 2, and 6 of the warrant, the seizure of his legal documents and notes was unreasonable.  In addition, Plaintiff asserts that the seizure violated his attorney-client privilege because he was representing himself in the cases to which the seized documents pertained.

In **Count Two**, Plaintiff asserts a Fourteenth Amendment due process claim against Defendants Hyman, Nichols, and Rodbell based on the following allegations: On

June 23, 2014, while released awaiting trial, Plaintiff requested a hearing on the order of protection at the Scottsdale City Court. While there, he also requested the return of his seized documents from the SPD satellite office. The clerk at the satellite office instructed Plaintiff to call Hyman's Sergeant and gave him a card. Plaintiff went to his car and called Sergeant Palopoli, who told him to call Hyman and stated that his request "'shouldn't be a problem.'" Plaintiff called Hyman, who told him he would see what he could do, but Hyman did not release the documents.

On August 6, 2014, Plaintiff attended the order of protection hearing he had requested from the Scottsdale City Court. The order of protection was based on incidents from the summer of 2013. Plaintiff, who still did not have his documents, was "completely unprepared" for the hearing, which he lost. On August 8, 2014, Plaintiff appealed. That same day, he also wrote the Scottsdale City Court and the District Attorney's Office, requesting the return of his documents. These requests were "denied or ignored." The judge who denied his request for assistance was the same judge who had presided over Plaintiff's order of protection hearing.

On November 15, 2014, Plaintiff wrote to the SPD's internal affairs office about his need to retrieve his documents, and Defendant Nichols responded the next week, stating that the items he requested "'have been impounded as evidence and will not be released at this time.'" Plaintiff alleges that Nichols "was negligent in his response." Plaintiff cites to the SPD's internal affairs policy on its website, which states, in part, that it is the SPD's responsibility to "'vigorously and thoroughly investigate all complaints against its employees in order to preserve public confidence in our willingness to oversee and control the public safety actions of our employees.'"

On November 18, 2014, Plaintiff wrote to the Superior Court judge who had signed the search warrant used in the seizure of his documents, and on November 22, 2014, Plaintiff mailed a notice to the SPD's legal department that he intended to file suit if his documents were not returned. On December 10, 2014, Plaintiff wrote to Defendant Rodbell about the same issue, and Rodbell did not respond. On December 22, 2014,

1  Plaintiff wrote to Defendant Nichols and received no response.  On January 9, 2015,
2  Plaintiff reported his documents stolen to the Phoenix Police Department ("PPD"), since
3  the seizure occurred in Phoenix, and the PPD referred the complaint to the SPD.  Plaintiff
4  avers that all of his requests for the return of his documents were either ignored or
5  denied, and none of these documents were ever used as evidence by the state in his
6  criminal case.

7  Plaintiff alleges that the SPD "deliberately and intentionally" kept his documents
8  to impair his chance to overturn the Scottsdale City Court's order of protection decision.
9  He alleges that Hyman, who "was never a party to the pre-existing case," and who was a
10 patrol officer, not a detective, at the time the order of protection was issued, testified
11 against Plaintiff in the August 6, 2014 order of protection hearing.  Plaintiff asserts that
12 "[w]hether deliberate or not, the continued retention of [his] documents significantly
13 impaired [his] ability to defend himself" during the August 6, 2014 hearing and
14 throughout the appeal process.

15 In **Count Three**, Plaintiff incorporates the allegations from Count Two and asserts
16 a separate Fourteenth Amendment "failure to intervene" claim.  Plaintiff sues Rodbell
17 and Nichols in their individual capacities as Police Chief and as Sergeant over internal
18 affairs (respectively) and Hyman in his individual capacity as Detective of the SPD's
19 Domestic Violence Unit for these Defendants' failures to prevent the alleged due process
20 violations surrounding the withholding of Plaintiff's documents.  Plaintiff also sues the
21 City of Scottsdale under a theory of municipal liability for the alleged unconstitutional
22 actions of its employees, including Rodbell, who, as the Police Chief, is the final
23 decision-maker for SPD operations, including those pertaining to "search and seizure,
24 internal investigation, and assignment and discipline of police personnel."

25 **III.  Failure to State a Claim**

26 To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants
27 (2) under color of state law (3) deprived him of federal rights, privileges or immunities
28 and (4) caused him damage.  *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th

1  Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d
2  1278, 1284 (9th Cir. 1994)).  Negligence is not sufficient to state a claim under § 1983.
3  *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986).  In addition, a plaintiff must allege that
4  he suffered a specific injury as a result of the conduct of a particular defendant and he
5  must allege an affirmative link between the injury and the conduct of that defendant.
6  *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

7  Although *pro se* pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519,
8  520-21 (1972), conclusory and vague allegations will not support a cause of action.  *Ivey*
9  *v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  Further, a
10 liberal interpretation of a civil rights complaint may not supply essential elements of the
11 claim that were not initially pled.  *Id*.

12 **A.   Count Two: Nichols**

13 Plaintiff fails to state a Fourteenth Amendment claim in Count Two against
14 Nichols.  Plaintiff's only allegations are that, as Sergeant over the SPD's internal affairs,
15 Nichols responded to Plaintiff's requests for the return of his documents by stating that
16 they had been impounded as evidence and would not be released at that time, and Nichols
17 did not respond to Plaintiff's same or similar request roughly a month later.  Plaintiff
18 alleges that Nichol's response was negligent in light of the SPD's stated policy to
19 investigate complaints in a fair and expeditious manner, but Plaintiff does not allege any
20 facts showing that Nichols failed to investigate Plaintiff's request, that his response one
21 week later that the requested items were being held for evidence was false, or that, even if
22 it was, Nichols had authority to order the release of those documents but failed to do so.
23 Moreover, even if the facts alleged show, as Plaintiff asserts, that Nichols was negligent –
24 either in his initial investigation and response denying Plaintiff's request, or in his
25 subsequent failure to respond – mere negligence is not enough to state a constitutional
26 violation.  The Court will dismiss Plaintiff's Fourteenth Amendment Claim in Count Two
27 against Nichols without prejudice.

28 . . .

### B. Count Three: Failure to Intervene

To the extent that Plaintiff attempts to assert a separate Fourteenth Amendment claim in Count Three against Defendants Rodbell, Nichols, and Hyman for their alleged "failure[s] to intervene" in the actions of their subordinates, Plaintiff fails to state a claim. There is no *respondeat superior* liability under § 1983, so a defendant's position as the supervisor of someone who allegedly violated a plaintiff's constitutional rights does not make him liable. *Monell*, 436 U.S. at 691; *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). A supervisor may be liable for the constitutional violations of his subordinates "if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor*, 880 F.2d at 1045. But Plaintiff does not allege any actions of these Defendants in Count Three that he does not allege in Count Two; nor do the facts alleged and incorporated from Count Two give rise to a separate constitutional claim. Accordingly, the Court will dismiss Plaintiff's Fourteenth Amendment "failure to intervene" claim against Defendants Rodbell, Nichols, and Hyman in their individual capacities in Count Three as duplicative of his Fourteenth Amendment due process claim against these Defendants in Count Two.

To the extent that Plaintiff also appears to assert a Fourteenth Amendment due process claim against Rodbell in his official capacity in Counts Two and Three and against the City of Scottsdale as the municipal entity responsible for the SPD's alleged repeated denials of Plaintiff's requests to have his documents returned in Count Three, the Court finds that, liberally construed, Plaintiff has alleged sufficient facts to show an unconstitutional custom or practice to support such a claim. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (for an individual to be liable in his official capacity, a plaintiff must allege that the entity's policy or custom was a moving force behind the alleged constitutional violation); *Sadoski v. Mosley*, 435 F.3d 1076, 1080 (9th Cir. 2006) (a plaintiff must allege, as a matter of law, that the entity's policy or custom caused him to suffer constitutional injury). As set forth below, the Court will require Rodbell and the City of Scottsdale to answer these claims.

**IV.     Claims for Which an Answer Will be Required**

Liberally construed, Plaintiff has stated a Fourth Amendment unreasonable seizure claim against Hyman in Count One, a Fourteenth Amendment due process claim against Hyman and Rodbell in his official capacity in Count Two, and a Fourteenth Amendment due process claim against the City of Scottsdale and Rodbell in his official capacity in Count Three. The Court will require these Defendants to answer these respective claims.

**V.     Motion to Appoint Counsel**

There is no constitutional right to the appointment of counsel in a civil case. *See Ivey v. Board of Regents of the University of Alaska*, 673 F.2d 266, 269 (9th Cir. 1982). In proceedings *in forma pauperis*, the court may request an attorney to represent any person unable to afford one. 28 U.S.C. § 1915(e)(1). Appointment of counsel under 28 U.S.C. § 1915(e)(1) is required only when "exceptional circumstances" are present. *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). A determination with respect to exceptional circumstances requires an evaluation of the likelihood of success on the merits as well as the ability of Plaintiff to articulate his claims *pro se* in light of the complexity of the legal issue involved. *Id.* "Neither of these factors is dispositive and both must be viewed together before reaching a decision." *Id.* (quoting *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)).

Having considered both elements, it does not appear at this time that exceptional circumstances are present that would require the appointment of counsel in this case. Plaintiff is in no different position than many *pro se* litigants. The Court will therefore deny without prejudice Plaintiff's Motion to Appoint Counsel.

**V.     Warnings**

    **A.     Copies**

Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files. Fed. R. Civ. P. 5(a). Each filing must include a certificate stating that a copy of the filing was served. Fed. R. Civ. P. 5(d). Also, Plaintiff must submit an additional copy of every filing for use by the Court. *See* LRCiv

5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### B.     Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)     Plaintiff's non-prisoner Application to Proceed in District Court without Prepaying Fees or Costs (Doc. 11) is **granted**.

(2)     Defendant Nichols is **dismissed** without prejudice.

(3)     Defendant Hyman must answer Counts One and Two, and Defendants Rodbell and the City of Scottsdale must answer Counts Two and Three of the Second Amended Complaint.

(4)     The Clerk of Court must send Plaintiff a service packet including the Second Amended Complaint (Doc. 16), this Order, and both summons and request for waiver forms for Defendants Hyman, Rodbell, and the City of Scottsdale.

(5)     Plaintiff must complete and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order.  The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(6)     If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Second Amended Complaint on a Defendant within 120 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(7)     The United States Marshal must retain the Summons, a copy of the Second Amended Complaint, and a copy of this Order for future use.

(8) The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure and Rule 4(j)(2) of the Federal Rules of Civil Procedure and Rule 4.1(c) of the Arizona Rules of Civil Procedure.  The notice to Defendants must include a copy of this Order.  **The Marshal must immediately file signed waivers of service of the summons.  If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must**:

(a) personally serve copies of the Summons, Second Amended Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) and Rule 4(j)(2) of the Federal Rules of Civil Procedure; and

(b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant.  The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Second Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required.  Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(9) **A Defendant who agrees to waive service of the Summons and Second Amended Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

(10) Defendants must answer the Second Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

TEMPSREF                                                     - 11 -

(11) Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(12) Plaintiff's Motion to Appoint Counsel (Doc. 15) is **denied** without prejudice.

(13) This matter is referred to Magistrate Judge Deborah M. Fine pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 4th day of August, 2015.

_____
David G. Campbell
United States District Judge